Affirmed.

30 C.C.P.A.(Patents)

### In re GRAY et al.
### Patent Appeal No. 4747.

Court of Customs and Patent Appeals.

June 1, 1943.

Harris M. Humason, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting all of the claims of appellants' application for a patent.

The claims rejected are method claims 1 to 6, inclusive, 9, 10, 11, 23 and 24, and product claims 12 to 17, inclusive, 20, 21 and 22.

Claims 2, 13 and 20 are illustrative and read as follows:

"2. The method of producing a dried milk characterized by its stability to oxidation and its resistance to the development or rancidity, which comprises introducing into liquid milk a compound selected from the group consisting of ascorbic acid, analogues and isomers thereof and reductone, such compound being introduced in sufficient quantity to effect such stabilizing and resistance in a substantial degree, and thereafter drying such milk."

"13. Dried milk characterized by the presence therein of an agent capable of

stabilizing such milk against oxidation and the development of rancidity, said agent being a compound selected from the group consisting of ascorbic acid, analogues and isomers thereof and reductone, and being present in an amount sufficient to effect such stabilizing in a substantial degree."

"20. A dried fish product characterized by the presence therein of an agent capable of stabilizing such fish against oxidation and the development of rancidity, said agent being a compound selected from the group consisting of ascorbic acid, analogues and isomers thereof and reductone, and being present in an amount sufficient to effect such stabilizing and resistance in a substantial degree."

All of the claims were rejected as lacking patentability over the cited prior art and also upon the ground of double patenting.

The references cited are: Musher, 2,-026,697, Jan. 7, 1936; Elger, 2,035,153, Mar. 24, 1936; Gray et al., 2,159,986, May 30, 1939.

Appellants' alleged invention is described in the decision of the Board of Appeals as follows:

"The claims on appeal are directed to the production of stabilized dried milk or the like and to a method of producing such stabilized product wherein the novelty resides mainly in the introduction into the emulsion which is to be dried of a specific antioxidant. Appellants' antioxidant is referred to as being selected from the group consisting of ascorbic acid, analogues and isomers thereof and reductone.

"Appellants have obtained a patent on the use of these same antioxidants for stabilizing emulsions including emulsions closely related to the ones which are here involved as starting materials."

The patent to Musher states:

"Deterioration of solid substances, and particularly food or substances used for food, due to oxidation, is well recognized. Such oxidative change may manifest itself in a variety of ways, as for example by development of rancidity in glyceride oils or fats or products containing them, by loss of flavor in the oxidation of essential oils, or products containing them, etc. These oxidative changes take place in a great variety of products, both edible and inedible, and even when such products are in substantially dry form. * * *

"Whole milk has a marked tendency to development of rancidity, while skim milk

powder develops a tallowiness or staleness, these changes resulting from either oxidation or aging."

The only antioxidants disclosed by Musher are of "vegetative" origin.

The Elger Patent No. 2,035,153 discloses the use of ascorbic acid in certain arsenical solutions which decompose by oxidation. The patent states: "Solutions of dihydroxy-diamino-arsenobenzene and its derivatives are subject to ready and rapid decomposition which renders them unsuitable for therapeutic use. The decomposition is due probably to an oxidizing process. It has now been found that the oxidation and subsequent decomposition of the said solutions may be prevented by adding ascorbic acid or salts of ascorbic acid."

Appellants' patent 2,159,986 issued May 30, 1939, upon an application filed December 28, 1935, discloses the use of an ascorbic acid in the preparation of certain food products such as "mayonnaise, salad dressing, cheese, butter, egg yolk, such as commercial frozen egg yolk, cod liver oil and other fish oil emulsions used for therapeutic purpose."

The patent states: "As is well known, certain changes normally occur in oils and fats, usually the result of oxidation, and commonly referred to as development of rancidity."

The claims of the patent are similar to the claims 1 and 12 here involved, except that the step of drying the emulsion is not disclosed in the patent. The method claims of the patent are also similar to the other method claims here involved, except that in the patent neither the food substances named in the claims before us are mentioned nor is the step of drying disclosed in said patent.

Inasmuch as appellants' instant application was filed on April 26, 1939, and their patent was issued in May, 1939, said patent is not prior art herein and its only relevancy is upon the question of double patenting.

The specific ground of rejection of the claims on the prior art was that the claims are unpatentable for lack of invention over Musher in view of Elger.

The Primary Examiner held that inasmuch as Musher disclosed that the use of certain vegetative antioxidants would prevent rancidity in food products, and Elger disclosed that oxidation and subsequent decomposition of arsenical solutions for

therapeutic use could be prevented by adding an ascorbic acid to said solutions, it would not involve the exercise of the inventive faculty to substitute an ascorbic acid for the vegetative antioxidants disclosed by Musher.

It is appellants' contention that oxidation is not the only cause of rancidity in food preparations, and therefore the disclosure in the prior art of the use of antioxidants is immaterial, upon the question before us.

However, appellants' instant application states: "The deterioration, commonly known as development of rancidity is believed to be, at least for the most part, the result of oxidation processes which take place in the butter fats contained in the milk."

There is nothing in the record to indicate that oxidation is not the sole cause of rancidity in food materials. Indeed, appellants' application further states: "The prevention of the development of rancidity and the production of stale off-flavors in certain oils and fats, by the use of so-called anti-oxidants, is known. Among the substances which have been so used are alphanapthol, catechol, 1-8 napthalene diol, alphanaphthylamine, etc. These substances are all characterized by the fact that they are not normal constituents of food or food products nor metabolic products of animal organism. For various reasons, including the fact that they contribute to anything to which they are added, tastes and flavors more objectionable than those arising out of the development of rancidity, they are not used in food and would be particularly objectionable in milk."

Therefore the question to be decided is whether the disclosure by Elger that an ascorbic acid acts as an antioxidant in arsenical solutions would indicate to one skilled in the art that it might also act as an antioxidant in the manner here claimed.

Upon this point the Primary Examiner stated:

"With regard to the Elger patent, applicants argue that although ascorbic acid is taught to overcome oxidation, the problem in dried milk is not just to prevent rancidity. In fact applicants contend that in the case of dried milk 'mere oxidation' may not necessarily be objectionable.

"With regard to this argument it should be pointed out that the claims are not all limited to treating dried milk. Several of the claims are drawn to treating fatty emulsions. Moreover, while oxidation may not be the sole destructive medium, it is clear from the specification that it is a very determined factor, and that the stabilizers are added primarily for the purpose of overcoming oxidation. Admittedly different organic fatty materials may, depending upon their chemical composition, be subject to various kinds and degrees of oxidative deterioration. While there may be some antioxidants that would be relatively unsatisfactory, there would be no invention in trying those which are clearly indicated in the art as useful in the same relation, to determine whether or not those antioxidants can be used with dried fatty emulsions such as dried milk."

What would be obvious to one skilled in the art is necessarily a matter of opinion.

We are not convinced that the Patent Office tribunals erred in holding that it did not involve invention to substitute an ascorbic acid disclosed by Elger for the vegetative antioxidants disclosed by Musher.

The only other question involved is whether the step of drying the fluid containing an ascorbic acid is inventive.

The Musher patent states that the antioxidants named therein may in the case of dried milk products be added to the milk, and the resultant product may then be spray dried. In view of this statement, we agree with the board that the step of drying in the claims does not render them patentable.

Moreover, as held by the examiner, ordinarily there is no invention in converting a liquid product to the dry form. See In re Nelson, 97 F.2d 601, 25 C.C.P.A., Patents, 1294.

We deem it proper to make one further observation. It may seem that it was inconsistent for the Patent Office to have allowed the claims of appellants' patent relating to the use of an ascorbic acid and to have rejected the claims here involved on the prior art. Even if such inconsistency existed, that would not be a matter that could be considered here, but it does appear from the record that at the time the Elger patent was issued, appellants' application upon which their patent was issued was pending in the Patent Office and therefore the Elger patent was not prior art with respect to that application.

In view of our conclusion that there was no error in the holding that the in-

volved claims are unpatentable over the cited prior art, it is not necessary for us to consider the question of double patenting.

For the reasons stated herein the decision appealed from is affirmed.

Affirmed.